UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-cv-25359-ALTMAN/Sanchez

**KAREN SANTIAGO**, *et al.,*
*individually and on behalf of all those
similarly situated*,

    *Plaintiffs*,

v.

**HONEYWELL INTERNATIONAL, INC.,**

    *Defendant.*
_____/

## ORDER GRANTING MOTION TO DISMISS

Our Plaintiffs, Karen Santiago and Deborah Mozina, individually and on behalf of all others similarly situated, have sued the Defendant, Honeywell International, Inc., alleging that Honeywell negligently installed digital electric meters (called "Smart Meters") for Florida Power & Light Company ("FPL"). *See generally* Second Amended Complaint (the "SAC") [ECF No. 150]. Honeywell has now filed a Motion to Dismiss (the "MTD") [ECF No. 155], arguing that (1) the Plaintiffs lack standing, (2) FPL is a required and indispensable party, (3) the Plaintiffs failed to state a claim, (4) the Plaintiffs' claims are time barred, and (5) the Plaintiffs failed to state a right to mandatory injunctive relief. *See generally* MTD. Because the Plaintiffs plainly lack standing, we **GRANT** the MTD and **DISMISS** the Plaintiffs' SAC *without* reaching Honeywell's other arguments.

### THE FACTS

In 2009, "FPL began the process to have digital Smart Meters distributed to the public and installed throughout Florida in place of the older analog meters." SAC ¶ 12. FPL contracted with Honeywell to "distribut[e]" and "install[ ]" the Smart Meters. *Id.* ¶ 13. Our Plaintiffs are two Florida residents who had Smart Meters installed on their properties. *See id.* ¶¶ 2–3. They claim that the Smart

Meters were installed without their "knowledge" or "permission" and accuse Honeywell of "inadequate inspection, improper installation and/or ill-fitting or damaged connections between the Smart Meter itself and the property owners' meter cans," which (they say) caused ongoing electrical problems. *Id.* ¶¶ 2–3, 33.

The original complaint, brought only by Ms. Santiago, was filed almost nine years ago—back in 2016, *see* Compl. [ECF No. 1]—and was assigned to U.S. District Judge Marcia G. Cooke, *see* Judge Assignment [ECF No. 2]. At a hearing on Honeywell's first motion to dismiss, Judge Cooke dismissed the Complaint, finding that Ms. Santiago lacked standing, that her claims were "barred by the statute of limitations," and that FPL was a "necessary party." Hr'g Tr. [ECF No. 54] at 33, 37. Nevertheless, Judge Cooke granted Ms. Santiago "leave to re-file" and "replead." *Id.* at 33. Ms. Santiago then joined up with Ms. Mozina, and the two Plaintiffs timely filed their First Amended Complaint. *See* First Am. Compl. [ECF No. 55]. But, because the First Amended Complaint *still* didn't name FPL as a party, Judge Cooke struck it from the docket. *See* Order Striking First Am. Compl. [ECF No. 58] ("Because the Amended Class Action Complaint does not meet the requirements stated by the Court at the March 16, 2018 hearing, it is hereby stricken." (cleaned up)).

The Plaintiffs appealed, and the Eleventh Circuit vacated Judge Cooke's order, directing the district court to explain whether FPL was both a "required party under [Federal] Rule [of Civil Procedure] 19(a)" and an "indispensable party" under Rule 19(b). *Santiago v. Honeywell Int'l, Inc.*, 768 F. App'x 1000, 1007 (11th Cir. 2019). On remand, Judge Cooke determined that, "even if FPL were a required party[,] . . . it is not [ ] indispensable," Order Setting Deadline to Respond [ECF No. 89] at 5, at which point Honeywell filed a second motion to dismiss, *see* Motion to Dismiss First Am. Compl. [ECF No. 90]. This time, Judge Cooke found that the Plaintiffs had established their standing, but she dismissed the First Amended Complaint anyway for failure to state a claim. *See* Order Granting Motion to Dismiss First Am. Compl. [ECF No. 132].

2

The Plaintiffs appealed again. *See* Notice of Appeal [ECF No. 133]. During that appeal, the Eleventh Circuit *sua sponte* directed the parties to file supplemental briefs addressing the question of standing. *See Santiago v. Honeywell Int'l, Inc.*, No. 21-13752 (11th Cir. Dec. 20, 2022), ECF No. 47. In response, the Plaintiffs advanced three standing arguments—all of which the Eleventh Circuit rejected. *See Santiago v. Honeywell Int'l, Inc.*, 2024 WL 2744673, at *1 (11th Cir. May 28, 2024). *First*, the Plaintiffs claimed that they had standing "because, if Honeywell doesn't inspect their meters, then they will have to foot the bill for their own inspectors." *Id.* at *3. In the Circuit's view, however, this injury (*viz.*, whether the Plaintiffs would have to "pay for an inspector in the future") was "purely hypothetical" and thus didn't constitute a sufficiently concrete injury to support the Plaintiffs' standing contentions. *Ibid. Second*, the Plaintiffs argued that their Smart Meters "have caused ongoing electrical problems and will cause future property damage." *Id.* at *3–4. Here, again, the Circuit found that the Plaintiffs lacked standing because their requested relief—an injunction requiring Honeywell to inspect and document, but not to *fix*, the malfunctioning meters—was not "significantly more likely" to redress their ongoing electrical problems. *Id.* at *4. *Third*, Ms. Mozina insisted that she had standing because she had been forced to pay "inflated" electric bills. *Id.* at *4–5. But, because Ms. Mozina's bills "were only inflated *before* Honeywell installed the Smart Meter," she had failed to show that her injuries were traceable to Honeywell's conduct. *Id.* at *5. Plus, the Circuit continued, even if Ms. Mozina could demonstrate some post-installation bill inflation, an injunction requiring Honeywell to inspect the Smart Meters would do nothing to redress her injury. *See ibid.* ("In any event, even if we credited the amended complaint's allegation about post-installation inflated bills as true now, we would still conclude Mozina failed to show redressability. . . . Mozina hasn't shown her requested relief is likely to result in a properly functioning meter.").

After Judge Cooke's untimely passing, the case was reassigned to us. *See* Clerk's Notice of Reassignment [ECF No. 148]. Once here, the Plaintiffs filed the now-operative SAC, in which they

3

amended their request for relief as follows:

> Plaintiffs, on their own behalf and on behalf of the Class, respectfully requests [sic] that this Court: . . . (iii) [c]ompel Honeywell to remove each Class Member's Smart Meter Honeywell installed and hire and utilize a licensed electrician to: adequately inspect the meter and the meter can to determine if the Smart Meter installation has caused any damage (including, without limitation, to the "male" connectors or "blades" or the "female" receptors or "jaws", to the wiring or any sign of arcing or "Hot Sockets"); photograph the meter and meter can; provide an inspection report and the photographs to the customer; and *to repair or replace the bad meter component(s), or properly install a new Smart Meter, as necessitated by the improper initial installation.*

SAC at 29 (emphasis added). Honeywell has now responded with its third motion to dismiss—which we address here—arguing (as before) that the Plaintiffs *still* "lack standing." MTD at 5–9. We agree.

## THE LAW

The U.S. Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies[.]'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). "Setting apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III—serving to identify those disputes which are appropriately resolved through the judicial process—is the doctrine of standing." *Id.* at 560 (cleaned up). To establish standing under Article III, a plaintiff must have suffered an "injury in fact" that's "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). The party invoking federal jurisdiction bears the burden of establishing these elements. *See Lujan*, 504 U.S. at 560. It's the last standing element—redressability—that's most problematic here.

"In order to establish that it has constitutional standing to bring a suit, a 'plaintiff must show . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Serv.*, 528 U.S. 167, 180–81 (2000)). "Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Id.* at 1304.

4

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n. 42 (11th Cir. 1991)). A dismissal for lack of subject-matter jurisdiction is not "a judgment on the merits" and is entered without prejudice. *Ibid.* (citing *Crotwell v. Hockman–Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984)). As with jurisdictional attacks, challenges to standing may be "facial" or "factual." *Ibid.* "[W]hen the attack is factual, . . . no presumptive truthfulness attaches to [the] plaintiff's allegations." *Santiago*, 2024 WL 2744673, at *5 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

## ANALYSIS

The Plaintiffs *still* haven't shown that they have standing to seek an injunction against Honeywell for its installation of the allegedly defective Smart Meters. As a preliminary matter, the Plaintiffs continue (at least partly) to ground their request for injunctive relief—a *prospective* remedy—on *past* harms. So, for instance, they ask us to "[c]ompel Honeywell" to "inspect" and "repair or replace . . . or properly install a new Smart Meter," SAC at 29, to remediate Honeywell's "improper [past] installation[s,]" which (again, in the past) caused the Plaintiffs to endure "trespass, property damage . . . and/or diminished property values," *id.* ¶ 4. But the Eleventh Circuit has already told the Plaintiffs that their request for "a prospective remedy would do nothing to redress past property damage[.]" *Santiago*, 2024 WL 2744673, at *4. And, while the Plaintiffs have also included allegations of ongoing or future harms—*e.g.*, "ongoing electrical problems[,] . . . diminishing property values[,] . . . ongoing property damage and/or inaccurately inflated electric bills[,] and threaten[ed] future damage and future inaccurately inflated bills," SAC ¶ 88—they still fail to show that a favorable decision by us would result in "a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered," *Fla. Wildlife Fed'n*, 647 F.3d at 1304.

5

The main problem—as we see it—is that the Plaintiffs want us to compel Honeywell to fix Smart Meters that are owned and operated by FPL, a party that isn't before us and over which (as a result) we have no authority. The Plaintiffs acknowledge that "the meter inserted into the meter can is property of FPL." SAC ¶ 10. They also concede that FPL operates and maintains those meters. *See ibid.* ("FPL maintains the meter, while the meter can is the homeowner's property, which the homeowner must maintain."). And FPL has submitted the sworn declaration of its manager of Smart Meter Operations and Analytics,[1] attesting that the utility "has not granted Honeywell [ ] the necessary authority to enter its customers' premises, to remove FPL's Smart Meter, and to repair or replace bad meter components, or install a new Smart Meter." Declaration of Eduardo Prieto ("Prieto Decl.") [ECF No. 156-1] ¶ 5. More importantly, "FPL does not anticipate that such authority will be granted in the future." *Ibid.* In other words, the Plaintiffs want us to order Honeywell—a company that, as we'll see, hasn't had anything to do with these meters for more than a decade—to break into the properties of thousands (perhaps millions) of Floridians and crack open Smart Meters that are owned and operated by an entirely different entity (FPL), which itself hasn't consented to any such break-in (and which has told us, in no uncertain terms, that it doesn't anticipate any such consent in the future). Any such order from us would thus require Honeywell to violate Florida law. *See* FLA. STAT. § 812.14(2)(b)–(c) ("A person may not: . . . (b) [a]lter the index or break the seal of any such meter; [or]

---

[1] Honeywell is advancing a factual (as opposed to a facial) challenge to the Plaintiffs' standing because it has relied on materials extrinsic to the pleadings, including its contract with FPL and the Declaration of FPL's manager of Smart Meter Operations and Analytics. *See Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (observing that the defendant had asserted a factual attack when it relied on extrinsic materials and challenged "the existence of subject matter jurisdiction in fact, irrespective of the pleadings"); *see also Santiago*, 2024 WL 2744673, at *2 n.2 ("Because the district court treated Honeywell's standing challenge as a rule 12(b)(1) factual attack—which Santiago and Mozina don't assert as error—it could consider matters outside the amended complaint, like Mozina's deposition testimony. . . . We do the same."). We may therefore consider documents that are extrinsic from the pleadings. *See Lawrence*, 919 F.2d at 1529 ("Factual attacks . . . challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." (cleaned up)).

(c) [h]inder or interfere in any way with the proper action or accurate registration of any such meter or device[.]"). And a plaintiff plainly lacks standing where, to prevail, the redress it seeks would require the defendant to interfere with the property rights of a third party. *See, e.g., Am. Hosp. Ass'n v. Price*, 867 F.3d 160, 167 (D.C. Cir. 2017) ("[E]quity courts, like any other, may not order parties to break the law."); *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) (holding that plaintiffs' requested relief wouldn't redress their alleged injury because they hadn't shown that non-parties "will ignore state law and follow a federal decree that does not bind them").

More fundamentally, the Plaintiffs lack standing because (as they, at times, appear to acknowledge) an order from us, standing alone, wouldn't redress their injuries. The Plaintiffs want us to issue an injunction directing Honeywell to "use its best efforts to enforce its contractual rights" vis-à-vis FPL and to persuade FPL to allow Honeywell to access the Smart Meters and then repair (or replace) them. *See* Resp. [ECF No. 157] at 10–11. As the Plaintiffs concede, however, "FPL, as a party to the contract but a non-party to this case, would not be bound by such a decree[.]" *Id.* at 11. And we'd be remiss if we didn't note (again) the reality that FPL has *expressly* told us it won't be persuaded by any such entreaties from Honeywell. *See* Prieto Decl. ¶ 5 ("FPL has not granted Honeywell with the necessary authority to enter its customers' premises, to remove FPL's Smart Meter, and to repair or replace bad meter components, or install a new Smart Meter. At this time, FPL does not anticipate that such authority will be granted in the future.").

The Plaintiffs have an answer for this too: "[S]hould [FPL] deny Honeywell's asserted contractual rights," they say, "then it will be free to defend against Honeywell's attempt to inspect," and it "is more likely than not that Honeywell will prevail in any such conflict with FPL." Resp. at 11. In other words, even if they win here, the Plaintiffs will then need Honeywell to sue (and prevail against) FPL. Without knowing it, in short, the Plaintiffs have conceded everything, because the Eleventh Circuit has been clear that it "must be the effect of the court's judgment *on the defendant—not*

7

*an absent third party*—that redresses the plaintiff's injury, whether directly or indirectly." *Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, 100 F.4th 1349, 1356 (11th Cir. 2024) (emphasis added) (quoting *Lewis v. Gov. of Alabama*, 944 F.3d 1287, 1301 (11th Cir. 2019)). In other words, as we've explained in other cases, when "nothing we do will—standing alone—have any concrete effect on the parties," and a favorable decision from us will be "just one step in a long and uncertain journey to redress," the plaintiff has failed to establish standing. *QR Triptych, LLC v. LV Midtown, LLC*, 659 B.R. 132, 151 (S.D. Fla. 2024) (Altman, J.); *see also ibid.* ("To continue down the winding road towards unlikely relief, therefore, QR would have needed, after prevailing here, *multiple victories* in different state courts."); *see also Lucas v. City of Delray Beach*, 692 F. Supp. 3d 1271, 1294 (S.D. Fla. 2023) (Altman, J.) ("Since the DEA isn't a party here, . . . we cannot order anyone to undo the DEA's decision."). Put differently, when our order would only spark an "attenuated—and speculative—chain of events" that *may* (or may not) redress the Plaintiff's alleged injury, the Plaintiff has failed to establish standing. *See QR Triptych*, 659 B.R. at 151. In the end, since our decision would be just a piece of paper the Plaintiffs would use to force Honeywell to sue FPL—and because the Plaintiffs cannot obtain true redress until some *other* court decides (if it ever does) that future lawsuit between Honeywell and FPL in Honeywell's favor—the Plaintiffs haven't shown that "the effect of [our] judgment on the defendant" would "redress[ ] the plaintiff's injury[.]" *Ctr. for a Sustainable Coast*, 100 F.4th at 1356.[2]

Still resisting, the Plaintiffs offer three arguments—all unpersuasive.

*First*, they claim that the Eleventh Circuit "impliedly rejected this argument" (about their compelling Honeywell to violate Florida law)—and that, as a result, the "mandate rule" precludes us from considering it. Resp. at 6. This is absolute frivolity. By its own terms, the Eleventh Circuit's

---

[2] In any event, the Plaintiffs get the standard all wrong. The question isn't whether it "is *more likely than not* that Honeywell will prevail in any such conflict with FPL." Resp. at 11 (emphasis added). The question, rather, is whether "a favorable decision would amount to *a significant increase* in the likelihood that [the Plaintiffs] . . . would obtain relief that directly redresses the injury suffered." *Fla. Wildlife Fed'n*, 647 F.3d at 1304 (emphasis added).

8

decision *never* addressed this question at all because the Circuit had already determined, for *other* reasons, that the Plaintiffs lacked standing. *See Santiago*, 2024 WL 2744673, at *2-4 (concluding "that neither Santiago nor Mozina have standing to seek [injunctive] relief" because "the amended complaint does not request that Honeywell repair or replace bad meter components, or that it properly reinstall new meters"). And "[t]he mandate rule does not prevent a district court from addressing an issue that was not determined, explicitly or by necessary implication in the previous appeal." *Wylie v. Island Hotel Co. Ltd.*, 774 F. App'x 574, 577 (11th Cir. 2019) (cleaned up). We're therefore perfectly "free to address, as a matter of first impression, those issues not disposed of on appeal." *Ibid.* (cleaned up).

*Second*, the Plaintiffs insist that they've followed "the Eleventh Circuit's unambiguous direction . . . to draft an amended complaint that seeks injunctive relief that will result in a properly functioning Smart Meter, in addition to an inspection of the current Smart Meter that's malfunctioning[.]" Resp. at 2–3; *see also ibid.* ("[T]he Eleventh Circuit gave Plaintiffs another shot at drafting a complaint which seeks a remedy that can redress their injuries. . . . Plaintiff's Second Amended Complaint does that."). This (again) is silly. The Eleventh Circuit found that the Plaintiffs hadn't established their standing because their complaint failed to ask the court to compel Honeywell to *actually* fix the meters. *See Santiago*, 2024 WL 2744673, at *4 ("[T]he amended complaint . . . only requests that Honeywell hire an inspector to take off the Smart Meters, photograph any damage, and then put the same malfunctioning Smart Meters back on without fixing any damage."). Having thus determined that the Plaintiffs lacked any pretense to standing—precisely because they hadn't done even the most basic work of asking for any actual relief—the Circuit didn't need to spend additional ink addressing other (deeper) problems with the Plaintiffs' standing contentions. The Plaintiffs (it's true) then went and corrected the specific (and low-hanging) standing problem the Eleventh Circuit had identified. But they did *nothing* to fix the harder-to-reach standing problems Honeywell has brought to light here—

9

*i.e.*, that the SAC asks us to compel Company A (Honeywell) to break into (and then repair) the property of Company B (FPL) without Company B's consent.

*Third*, the Plaintiffs maintain that they're not asking us to order Honeywell "to violate Florida law." Resp. at 6. Here, the Plaintiffs rely on three things: an inapposite Florida statute, an irrelevant Florida administrative rule, and an immaterial contract. We'll address each in turn.

Starting with Florida law, the Plaintiffs contend that Honeywell can lawfully inspect, repair, and replace the allegedly defective Smart Meters under FLA. STAT. § 366.05. *See* Resp. at 7–8. But that statute says only that "[t]he *commission* shall provide for the examination and testing of all meters used for measuring any product or service of a public utility." FLA. STAT. § 366.05 (emphasis added). Two problems with this statute. *One*, by its unambiguous terms, it only allows for "examination and testing" of the meters. It nowhere provides for the *replacement* or *repair* of the meters. And that's a big problem for the Plaintiffs because the big fix they've touted in their SAC—the big change that distinguishes their new complaint from the one the Eleventh Circuit already rejected—is, as we've seen, the SAC's specific demand that Honeywell *replace* or *repair* the Smart Meters, something this statute doesn't authorize anyone to do. *Two*, and no less problematically, this statute authorizes *only* the Florida Public Service Commission to conduct the "examination and testing" of the meters. Since it's undisputed that Honeywell isn't the Public Service Commission, this statute doesn't give Honeywell the right to do any of the things the Plaintiffs are demanding here.

The Plaintiffs' reliance on FLA. ADMIN. CODE R. 25-6.059 fares no better. *See* FLA. ADMIN. CODE R. 25-6.059 ("[T]he utility shall make arrangements for a meter test to be conducted by an independent meter testing facility of the customer's choosing. . . . Where appropriate, the meter may be field tested."). We see at least three problems with the Plaintiffs' reliance on this rule. *One*, the rule only contemplates a "meter test"—not a meter fix. *Two*, the rule only permits "the *utility*" to "*make*

10

*arrangements* for a meter test to be conducted." The "utility" isn't Honeywell—it's FPL,[3] the same utility whose sworn declaration makes clear that it has no plans to make any such arrangements. *Three*, the rule only provides for meter testing "[a]t the request of the customer." Because Honeywell plainly isn't the "customer," it may not demand any meter testing under the rule.

Finally, the Plaintiffs rely on the contract between Honeywell and FPL, pursuant to which FPL hired Honeywell to install the Smart Meters. *See* Resp. at 9 (arguing that the contract requires Honeywell to "repair, replace or otherwise correct any failure to meet a warranty obligation or to repair, replace or otherwise correct any defect, deficiency or nonconformance" under the contract's warranty (quoting Contract [ECF No. 97-4] §§ 1.7, 58)).[4] But nothing in the contract authorizes Honeywell to violate Florida law by breaking into and repairing (or replacing) the meters long after the contract's expiration—and *without* FPL's consent. So, the contract cannot justify the Plaintiffs' requested relief.

\*   \*   \*

After careful review, therefore, we **ORDER and ADJUDGE** that Honeywell's Motion to Dismiss [ECF No. 155] is **GRANTED**. The Second Amended Complaint [ECF No. 150] is **DISMISSED** without prejudice.

---

[3] According to FLA. ADMIN. CODE R. 25-6.003, "the word or words 'utility' or 'electric utility' as used in these rules shall have the same meaning as set out for 'public utility' in Section 366.02, F.S." And Section 366.02, in turn, defines a "public utility" as "every person, corporation, partnership, association, or other legal entity and their lessees, trustees, or receivers supplying electricity or gas (natural, manufactured, or similar gaseous substance) to or for the public within this state[.]" Obviously, this definition doesn't cover Honeywell—and the Plaintiffs never suggest that it does.

[4] Both parties cite to this contract, which isn't attached to their briefing—much less to the SAC. Fortunately, we found the contract as an exhibit to the Plaintiffs' Motion for Class Certification. *See* Motion for Class Certification [ECF No. 97]. Still, because the Plaintiffs rely on it, we can consider the contract if it's "central" to their claims and if its authenticity isn't disputed. *See Day v. Taylor*, 400 F.2d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement[.]"). Because neither party disputes the contract's authenticity—and since the Plaintiffs view it as central to their claims—we agree to consider it here.

11

**DONE AND ORDERED** in the Southern District of Florida on February 5, 2025.

                                                **ROY K. ALTMAN**
                                                **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record